IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHEET METAL WORKERS' HEALTH )
AND WELFARE FUND OF NORTH )
CAROLINA, et al., )
 )
    Plaintiffs, ) NO. 3:19-cv-00976
 ) JUDGE RICHARDSON
v. )
 )
STROMBERG METAL WORKS, INC., et )
al. )
 )
    Defendants. )

## MEMORANDUM OPINION

Pending before the Court is a Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to the Eastern District of North Carolina (Doc. No. 35, "Motion"), filed by Defendant Stromberg Metal Works, Inc. ("Stromberg")[1] Plaintiffs filed a response in opposition (Doc. No. 39), and Stromberg filed a reply (Doc. No. 41).

## BACKGROUND

This action was filed pursuant to the Employee Retirement Income Security Act ("ERISA") and the Labor-Management Relations Act ("LMRA"). Plaintiffs are employee welfare benefit plans, employee pension benefit plans, and joint labor-management organizations (collectively, "the Funds"). (Doc. No. 1 at 2-4). Plaintiffs sued Stromberg to collect "unpaid fringe benefit contributions" pursuant to ERISA and the LMRA. (*Id.* at 2). Stromberg is a sheet metal

---

[1] With the announced settlement between Plaintiffs and Defendants Triangle Servitek, LLC, Joel Garcia Castillo, and Jazmin Castrejon (Doc. No. 56), for purposes of the Motion, Stromberg is the only remaining Defendant.

fabrication and installation company and is an "employer" within the meaning of ERISA. (*Id.* at 4; Doc. No. 18 at ¶ 14). Stromberg is incorporated in Maryland with a principal place of business in Beltsville, Maryland and an affiliate office in Raleigh, North Carolina. (Doc. No. 1 at 4; *see also* Doc. No. 30 at 2).

The Initial Case Management Order ("ICMO") in this case[2] reflects that Plaintiffs claim Stromberg is a signatory to and bound by collective bargaining agreements ("CBAs") that govern rates of pay, benefits, and other working conditions for persons performing sheet metal craft work for Stromberg, including the requirement of certain contributions to the Funds for each hour worked by Stromberg's sheet metal workers. (*Id.*; *see also* Doc. No. 1 at 5). Plaintiffs allege that Stromberg failed to report certain hours worked by temporary labor employees (workers who were obtained from outside entities to perform covered sheet metal craft work) and failed to remit Fund contributions for those "temporary workers." Plaintiffs assert that this failure by Stromberg violates both ERISA and the LMRA and entitles Plaintiffs to an award of delinquent contributions, plus fees and costs. ( *Id.* at 9; Doc. No. 30 at 2).

Stromberg, on the other hand, argues that not all workers who performed work on its construction projects were its employees or workers for whom contributions were owed to the Funds under the CBAs. Stromberg maintains that it does not owe contributions to the Funds and cannot be compelled under the LMRA to make contributions on behalf of non-employees. (*Id.* at 2-3). Stromberg contends that it followed the applicable agreements between the parties and made appropriate contributions for the respective employees at each project and Plaintiffs are not entitled to seek back contributions for individuals who are not employees of Stromberg. (*Id*. at 3).

---

[2] The theories of the parties in the ICMO were proposed respectively by the parties themselves (Doc. No. 20) and adopted by the Magistrate Judge. (Doc. No. 30).

Via the Motion, Stromberg asks the Court to dismiss this action against it for improper venue or, in the alternative, to transfer this action to the U.S. District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404 ("Section 1404"). Because the Court finds that the case should be transferred to the Eastern District of North Carolina, in accordance with Section 1404, it need not reach the issue of improper venue.

## MOTIONS TO TRANSFER

The standard for transfer of venue to a more convenient forum is found in Section 1404, which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3] 28 U.S.C. § 1404(a); *TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019). The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant.[4] *Id.* Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *Id.* A defendant must make a clear and convincing showing that the balance of convenience strongly favors the alternate forum. *Id.*

---

[3] Although Plaintiffs state, "It is not clear that this case could have been brought in the Eastern District of North Carolina" (Doc. No. 39 at 6), the Court finds that this action "might have been brought" in the Eastern District of North Carolina, as ERISA provides that an action may be brought "where a defendant resides or may be found." 29 U.S.C. § 1132(e).

[4] "The burden rests with the moving party to establish that venue should be transferred." *Winnett v. Caterpillar, Inc.*, 3:06–cv–00235, 2006 WL 1722434, *2 (M.D. Tenn. June 20, 2006).

In reviewing a motion to transfer, a court balances case-specific factors, including the private interests of the parties[5] and public-interest concerns,[6] such as systemic integrity and fairness. *Id.; see also Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020).[7] A district court "has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), *cited in Sardeye v. Wal-Mart Stores East, LP,* Case No. 3:18-cv-01261, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019). "Although a plaintiff's choice of forum is generally given deference, that choice may be defeated, especially in cases when the plaintiff has little or no connection to the chosen forum." *Harris v. Parker*, No. 3:20-cv-01110, 2021 WL 229651, at *3 (M.D. Tenn. Jan. 22, 2021).

## ANALYSIS

As noted, Plaintiffs claim that Stromberg underreported covered work hours and underpaid required contributions to the Funds by hiring and misclassifying temporary workers for its jobs. Plaintiffs assert that venue is proper in this district because one of the Plaintiff Funds is administered here.

Stromberg's North Carolina Regional Executive William Blank, who is also a Trustee of Plaintiff Sheet Metal Workers' Health and Welfare Fund of North Carolina ("Health Fund"),

---

[5] Private interests include location of willing and unwilling witnesses, residence of the parties, location of sources of proof, location of the events that gave rise to the dispute, systemic integrity and fairness, and plaintiff's choice of forum. *Tailgate Beer,* 2019 WL 2366948, at *7.

[6] Public interests include enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, and familiarity of the trial judge with the applicable state law. *Tailgate Beer,* 2019 WL 2366948, at *7.

[7] The Court appropriately considers evidence outside the pleadings in resolving a motion to transfer. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877, n.3 (M.D. Tenn. 2019) (citing *U.S. v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010) Despite doing so, however, the Court still draws all reasonable inferences in favor of the plaintiffs. *Id.*

characterizes the dispute in this case as "whether Stromberg correctly classified its workers for various jobs, which in turn determined the amount of contributions, if any, Stromberg owed to Plaintiffs." (Doc. No. 37 at 1).[8] Stromberg argues that the relevant jobs were in North Carolina; that is, all workers at issue were in North Carolina, working on North Carolina projects. (*Id.*) Stromberg claims that its records show that none of these workers lived in Tennessee. (*Id.* at 2). Stromberg does not perform jobs or projects in Tennessee. (*Id.*) Plaintiffs have not disputed these facts. Stromberg also asserts that all persons who can testify as to the work performed by the various workers at dispute in this case, how those workers were classified, and how fund contributions were calculated, are based in North Carolina. (*Id.*) Those persons in North Carolina know about the duties and assignments of the workers on the different North Carolina jobs. (*Id.*) Stromberg asserts that, besides these North Carolina employees, the one other person who was involved in calculating its contributions based on worker classifications lives in Maryland, not Tennessee. (*Id.*)

Stromberg alleges it has no offices, business registration, or agents in Tennessee and has no employees working here. (*Id.* at 3). Stromberg contends that all its books and records related to the jobs, workers, and projects at issue are in North Carolina. (*Id.* at 4). Stromberg argues, therefore, that the convenience and availability of the witnesses strongly favor transfer of this action to North Carolina. It asserts that all of its personnel with knowledge and information relevant to the claims at issue are located in North Carolina. Stromberg's representative stated that he knows of no person residing in Tennessee who can testify as to the work performed by the

---

[8] The Complaint states that Stromberg's classification of workers determines the amount of contributions under the applicable CBAs. (Doc. No. 1 at 17-41).

various workers on the Stromberg jobs at dispute in this case, how these workers were classified, and how fund contributions should be calculated. (*Id.* at 2).

Stromberg contends that because the four temporary staffing service companies it used are all in North Carolina, witnesses from those companies are non-parties[9] who cannot be compelled to appear in this Court. Fed. R. Civ. P. 45(c)(1)(A).[10] Stromberg asserts that these witnesses are a critical part of Plaintiffs' allegations, citing the Complaint (Doc. No. 1 at ¶¶ 31-35; *see also id.*at ¶¶ 37-39, 41-43). Plaintiffs have placed Stromberg's relationship with these temporary staffing services companies and their actions at issue;[11] and witnesses from these companies, all in North Carolina, appear necessary to the Court. Convenience of non-party witnesses, as opposed to parties or employee witnesses, is one of the most important factors in the transfer analysis. *City of Pontiac Gen. Employees' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 3-12-0457, 2012 WL 12543462, at *1 (M.D. Tenn. July 25, 2012); A*ntony v. Buena Vista Books, Inc.*, Civil Action No. 18-205-DLB-CJS, 2020 WL 5995590, at *3 (E.D. Ky. Oct. 1, 2020).

ERISA provides that an action such as this one "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Plaintiffs argue that the plan of the Health Fund, one of the eight Plaintiffs, is administered in this district by Southern Benefit Administrators, Inc. ("SBA") in Goodlettsville, Tennessee. Plaintiffs filed the Declaration of Kim Reynolds, Delinquency Manager at SBA, who

---

[9] Now that Plaintiffs have settled with the Triangle Servitek Defendants, those companies and their employees will no longer be party witnesses.

[10] A subpoena may command a non-party witness to attend a trial, hearing, or deposition only within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A).

[11] Indeed, as indicated, Plaintiffs actually sued one of these companies and two of its employees, the "Triangle Servitek Defendants."

stated that SBA is the third-party administrator for the Health Fund and handles all administrative matters for that fund. (Doc. No. 40 at 1).

Stromberg maintains that, per the Plan documents, the Trustees of the Health Fund have the sole authority to administer the Plan, to the exclusion of SBA, even though the Trustees have delegated administrative functions to third-party administrators such as SBA. (*Id.* at 3-4). Stromberg also asserts that the Health Fund (which is called the Health Fund *of North Carolina*) is governed by four Trustees, none of whom live in this district. (Doc. No. 37 at 3). Stromberg states that those Trustees meet in North Carolina, never in Tennessee. (*Id.* at 4). Thus, Stromberg argues, the *Trustees* (not SBA) administer the Health Fund plan, and they administer it in North Carolina, not in Tennessee.

Under a plain reading of the statute, a plan "is administered" in the district where it is "managed" or directed. *Ret. Plan of Unite Here Nat'l Ret. Fund v. Vill. Resorts, Inc.*, No. 08 Civ. 4249 (RPP), 2009 WL 255860, at *3 (S.D. N.Y. Feb. 3, 2009); *see also Wallace v. Am. Petrofina, Inc.*, 659 F. Supp. 829, 830 (E.D. Tex. 1987) (court must look to the place where the plan is managed to determine where proper venue lies). Further, a plan can be administered in more than one district. *Ret. Plan of Unite Here*, 2009 WL 255860, at *3. When determining the place where the plan is managed,[12] courts generally look at the location of the plan's office, storage of records, eligibility determinations and appeals, and the employees responsible for the plan's work. *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, Civil Action No. 1:11-CV-0312-CC, 2012 WL 13187476, at *1 (N.D. Ga. Feb. 27, 2012) (citing *Luebbert v. Emp'rs and Operating Eng'rs Local*

---

[12] Federal district courts have held that an ERISA plan is "administered" at the place where the plan is managed. *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, Civil Action No. 1:11-CV-0312-CC, 2012 WL 13187476, at *1 (N.D. Ga. Feb. 27, 2012) (citing *Ret. Plan of Unite Here*, 2009 WL 255860, at *3.

*520 Pension Fund*, No. 4:06-cv-01140-ERW, 2007 WL 1100455, at *2 (E.D. Mo. Apr. 10, 2007) (a plan is "administered" in a particular place if trustees meet there, physical records relating to the plan are located there, and day-to-day management of the plan is conducted there)).

If the Court did have to determine exactly where the Health Fund is administered, it is noteworthy that the Court conceivable could find that it is administered in North Carolina *as well as* Tennessee. *See Ret. Plan of Unite Here*, 2009 WL 255860, at *3 (noting that a plan can be administered in more than one district). But the Court does not have to make this determination, because venue is *also* proper in (and therefore this action can be transferred to) the district where the breach occurred and/or where the defendant resides or can be found. 29 U.S.C. § 1132(e)(2). The statute is written in the disjunctive, so proper venue is not limited to the place where a particular fund is administered but rather could extend to either of two options mentioned in the prior sentence.

Here, all Defendants (both original and remaining) are in North Carolina.[13] The potential claimants under the Funds, persons who worked for Stromberg, are most likely[14] in North Carolina. The determining issue in this case, whether Stromberg was required to contribute additional money for these "temporary workers" is centered in North Carolina. Indeed, decisions Stromberg made about these workers (including how to classify them and whether or how much to contribute to the Funds on their behalf), occurred in North Carolina, so the challenged practices occurred there.

---

[13] Plaintiffs represented that the other Plaintiffs (besides the Health Fund) are administered or located one in Knoxville, Tennessee and six in Fairfax, Virginia (Doc. No. 1 at 2-4), neither of which is in this district. The Court also notes that Fairfax, Virginia is closer to Raleigh, North Carolina, than to Nashville, Tennessee.

[14] It is admittedly conceivable, of course, that a worker could have moved from North Carolina after working for Stromberg for a time.

Plaintiffs have offered nothing to dispute this fact or to show that SBA in any way made these decisions. Stromberg made the decisions as to the amounts of its contributions in North Carolina, so the alleged breach occurred in North Carolina.[15] Moreover, the Court assumes that the local unions were in North Carolina and that the CBAs under which Plaintiffs contend Stromberg owes additional funds were carried out in North Carolina. Plaintiffs are correct that their choice of venue should be given great weight, but the sole basis for finding venue in this District is their claim that one of the eight Plaintiffs is administered by a third-party administrator here.

Plaintiffs contend that Ms. Reynolds, a Tennessee resident and employee of SBA, is a necessary witness who resides in this District.[16] Plaintiffs' initial disclosures indicate that Ms. Reynolds "is likely to have knowledge about Stromberg's payments and delinquencies to the Funds." (Doc. No. 35-1 at 3). Stromberg does not dispute the information about its payments and alleged delinquencies to the Funds, however (Doc. No. 36 at 9); rather, it argues that the disputed issue is not how much money it actually paid, but whether that amount was the correct amount, and evidence about that issue, including relevant witnesses, is in North Carolina. (*Id.*). Stromberg claims, credibly, that the testimony or conclusions of Ms. Reynolds will be dependent upon whether the North Carolina supervisors properly classified North Carolina employees working on these North Carolina jobs. (Doc. No. 41 at 5).

Weighing the private interests, the Court finds that the location of witnesses, residences of the parties, location of sources of proof, and location of events that gave rise to this dispute all

---

[15] Plaintiffs argue that the alleged breaches "appear to have occurred" in Maryland because that is where Stromberg's monthly reports and concomitant payments are kept, but Stromberg asserts that the decisions concerning these North Carolina workers were made where the workers were hired, at Stromberg's operations in North Carolina, and Plaintiffs have not shown otherwise.

[16] None of the other witnesses on Plaintiffs' initial disclosures is a resident of this District. (Doc. No. 35-1 at 3-4).

weigh in favor of transfer. Moreover, systemic integrity and fairness also weigh in favor of transfer since most, if not all, of the workers who would benefit from the relief Plaintiffs seek are in North Carolina. Plaintiffs' choice of forum is the only private interest factor weighing in favor of not transferring this case. The public interests of enforceability of any judgment, practical considerations affecting trial management, and local interest in deciding local controversies at home all weigh in favor of transfer. The public interests of docket congestion and familiarity of the trial judge with the applicable law are neutral factors in this instance.

In its discretion, the Court finds that the totality of the circumstances, especially the convenience of non-party witnesses, weighs in favor of transferring this action, in the interest of justice, to the Eastern District of North Carolina, where it could have originally been brought, where the alleged breach occurred, where the Defendant is found, and where the majority of the witnesses are located.

## CONCLUSION

For these reasons, the Court finds that Defendant Stromberg's Motion to Dismiss should be denied and its Motion to Transfer should be granted. An appropriate Order shall be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE