IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-101-BO

SHEET METAL WORKERS' HEALTH & )
WELFARE FUND OF NORTH CAROLINA, )
SHEET METAL WORKERS' UNION TRAINING )
FUND OF NORTH CAROLINA; SHEET METAL )
WORKERS' NATIONAL PENSION FUND; )
INTERNATIONAL TRAINING INSTITUTE FOR )
THE SHEET METAL AND AIR CONDITIONING )
INDUSTRY; NATIONAL ENERGY )
MANAGEMENT INSTITUTE COMMITTEE FOR )
THE SHEET METAL AND AIR CONDITIONING )
INDUSTRY; SHEET METAL OCCUPATIONAL )
HEALTH INSTITUTE TRUST; NATIONAL )
STABALIZATION AGREEMENT OF THE )
METAL INDUSTRY; and SHEET METAL )
WORKERS' INTERNATIONAL SCHOLARSHIP )
FUND, )
          Plaintiffs, )
 )
v. )     O R D E R
 )
STROMBERG METAL WORKS, INC., )
          Defendant. )

This cause comes before the Court on the parties' cross-motions for summary judgment as well as several motions to strike. The appropriate responses and replies have been filed, or the time for doing so has expired, and a hearing on the matters was held before the undersigned on June 2, 2021, at Elizabeth City, North Carolina. Supplemental briefing was completed on July 20, 2021, and, in this posture, the motions are ripe for ruling.

BACKGROUND

Plaintiffs commenced this action by filing a complaint on November 1, 2019, in the United States District Court for the Middle District of Tennessee to recover unpaid fringe benefit

contributions pursuant to Section 515 of the Employee Retirement Security Income Act (ERISA), 29 U.S.C. § 1145, and Section 301 of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185. [DE 1]. Plaintiffs filed suit against defendant Stromberg Metal Works as well as a temporary staffing agency, Triangle Servitek, and its agents Joel Garcia Castillo and Jasmine Castregon. The case was transferred to this district on March 1, 2021. The Triangle Servitek defendants were dismissed with the consent of plaintiffs by order filed June 1, 2021. Unless otherwise indicated, the following facts are derived from the undisputed facts submitted by the remaining parties. [DE 75, 78].

Plaintiffs (the Funds or plaintiff Funds) are employee welfare and pension benefit plans and joint labor-management organizations.[1] Defendant Stromberg Metal Works (Stromberg) is a commercial sheet metal fabrication and installation company with a regional office in Raleigh, North Carolina. Stromberg employs workers represented by Local 5 and Local 100 of the Sheet Metal, Air, Rail and Transport International Union and has been a signatory to their collective bargaining agreements (CBA). The CBAs govern, among other things, working conditions, rates of pay, and benefits for workers performing sheet metal work as defined by the CBAs. [DE 1] Compl. ¶ 18. The CBAs provide for four classifications of workers performing sheet metal work under the CBA: journeyman, apprentice, pre-apprentice, and classified. The CBAs further provide for a ratio of journeyman to non-journeyman metal workers that Stromberg and other employer-signatories must follow. The Local 5 CBA requires employer-signatories to maintain a 1-to-2 ratio

---

[1] The plaintiff Funds are comprised of a Health Fund, an Apprenticeship Fund, a Pension Fund, an employee pension benefit plan, two employee welfare benefit plans, a joint labor-management organization, and a joint labor-management health and safety organization. *See* [DE 78 ¶¶ 1-8].

2

of journeyman to non-journeyman sheet metal workers, or one journeyman to one apprentice and one pre-apprentice or classified worker.[2]

In addition to setting staffing ratios, the CBAs also set contribution rates at which employer-signatories such as Stromberg contribute to the Funds for the benefit of employee-participants. An employer is required to make contributions for employees as classified by the CBA and other labor negotiation agreements. "The hourly contribution rates are significantly higher for journeymen (e.g. $6.60 pension, $5.25 health) and apprentices ($4.49 averaged pension, $5.25 health) than classified workers ($0.33 pension, $1.29 health)." [DE 1] Compl. ¶ 28.

Local 5 and Local 100 operate a hiring hall which, under the CBA, employer-signatories such as Stromberg are obligated to use as a first source of hiring. However, the CBAs permit employers to hire workers not referred by the local unions under certain circumstances. When workers are hired outside the local unions, the CBAs require that the employer refer the worker to the local union for assessment of proper classification, including wage rate. Stromberg used the services of five temporary staffing agencies: Triangle Servitek, LLC; G.A.B. Labor Solution, LLC; Mechanical Labor Staffing, LLC; AEROTEK, Inc.; and Multi-Tech Mechanical Support. Former co-defendant Triangle Servitek provided temporary sheet metal workers to Stromberg for various jobs in North Carolina. Workers hired by Stromberg from a temporary staffing agency performed the same type of sheet metal work for Stromberg as Stromberg employees. Because the parties dispute whether workers hired through a staffing agency are "temporary employees" or "temporary workers," for the purposes of this order the Court refers to these workers as "temporary sheet metal workers." Although required by the CBA, Stromberg did not refer every worker it hired outside

---

[2] Plaintiffs contend, and Stromberg does not disagree, that only the Local 5 CBA ratio is relevant to this case because all of the temporary sheet metal workers addressed herein worked in the Local 5 jurisdiction in North Carolina.

3

Local 5 to the union hall for assessment and classification as a journeyman, apprentice, pre-apprentice, or classified worker.

A Resolution 78 Agreement is a local agreement between employers and local unions to amend terms applicable to a particular job site. Resolution 78 Agreement terms are typically more favorable to the employer, allowing the employer to bid for work more competitively over non-union employers. Stromberg and Local 5 entered into two Resolution 78 Agreements regarding projects in North Carolina – the Mary Ellen Jones Project and the New Bern Project. Both the Mary Ellen Jones and New Bern Project Resolution 78 Agreements set out terms more favorable to Stromberg, including the ratio of worker classification on the project. The Mary Ellen Jones and New Bern Project Resolution 78 Agreements are each one of the documents that govern the amount of contributions Stromberg was required to make to plaintiffs during the time period for which plaintiffs have sought delinquent contributions in this case. *See* [DE 61-3].

In April 2017, Local 5 filed a grievance alleging that Stromberg had violated the CBA by using temporary sheet metal workers. Specifically, Local 5 alleged that Stromberg had violated union hall hiring procedures and requested that all hours performed by non-referred bargaining unit employees be paid to the Union and that the benefit funds be made whole. Stromberg then filed its own grievance against Local 5, alleging that Local 5 was unable to provide manpower needs for apprentices, pre-apprentices, and classified workers in the ratios agreed to under the CBA. On July 14, 2017, Stromberg and Local 5 settled their dispute and entered into a Grievance Settlement Agreement (2017 Settlement).

In October 2018, Local 5 filed another grievance under the CBA relating to Stromberg's use of temporary sheet metal workers. Local 5 argued that Stromberg had circumvented hiring hall procedures and subcontracted work to companies/employees who were not signatories with Local

4

5. Local 5 requested that Stromberg make it whole for all lost wages, benefits, assessments, and damages caused by Stromberg's violation of the CBA. In December 2018, a meeting was held on the October grievance at which Joseph Powell, a trustee of plaintiff Pension Fund and a representative of SMART International Union, and Karla Campbell on behalf of plaintiff Health Fund, among others, were present. Mr. Powell reviewed a draft of a settlement agreement and in an email sent on January 3, 2019, indicated that the provisions of the eventual settlement agreement would be retroactive. Local 5's grievance was settled by a final settlement agreement signed January 14, 2019 (2019 Settlement).[3] Paragraph 14 of the 2019 Settlement provides that "Stromberg agrees to let go all temporary workers by January 31, 2019. In return, Local 5 agrees not to go back against Stromberg for working dues, lost wages etc. based on the hiring of temporary workers. Additionally, Local 5 will withdraw the pending grievance against Stromberg related to the hiring of temporary workers." [DE 62-2]. The 2019 Settlement was signed by representatives of Local 5 and Stromberg Metal Works. The 2019 Settlement settled Local 5's and Stromberg's dispute regarding the applicability of the terms in the CBA to an audit conducted by the Funds.

The Funds are governed by their plan trust documents and the CBA, though they do not participate in the bargaining between the union and employers. Thus, the Funds must rely on reports that signatory-employers like Stromberg submit to them and they are permitted to audit employers to ensure compliance with the CBA. In November 2017, during a meeting of the Board of Trustees of the Sheet Metal Workers' Health and Welfare Fund of North Carolina, the trustees concluded that a payroll audit of Stromberg Metal Works was needed. [DE 67-5 at 107]. This decision was made following an issue that had arisen regarding Stromberg's reporting practices for temporary sheet metal workers. In June 2017, Stromberg had begun submitting reports and

---

[3] The signatures reflect dates of January 14, 2018, but the agreement was signed in 2019. [DE 63] Bigelow Decl. ¶ 8.

5

payments reflecting the lowest worker classification rate to the Funds on behalf of some temporary sheet metal workers. The trustees determined that an audit was "mandatory to clarify what contributions should be received by the Fund and on whose behalf." *Id.* Stromberg contends that it did not believe at the time that it owed any contribution to any of the plaintiff Funds for the temporary sheet metal workers, but that it made contributions to "buy its peace" because Local 5 believed otherwise.

This suit followed plaintiffs' receipt of an audit of Stromberg conducted by a third-party auditor. Plaintiffs seek to recover what they allege to be unpaid fringe benefit contributions by Stromberg under the applicable CBAs.

## DISCUSSION

I. Motions to strike

"The resolution of evidentiary issues is within the court's sound discretion, including any involving affidavit evidence submitted at the summary judgment stage." *Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 713 (E.D. Va. 2010).

A. *Plaintiff's motion to strike declaration of William Blank and errata sheet* [DE 82]

William Blank submitted to a deposition as a Rule 30(b)(6) designee for Stromberg on September 15, 2020. On October 13, 2020, Mr. Blank submitted an errata sheet with changes to five of his answers. Stromberg then submitted a declaration by Mr. Blank in support of its motion for summary judgment which the plaintiffs contend contradicts his deposition testimony in key ways.

Rule 30(e) of the Federal Rules of Civil Procedure provides that a deponent is permitted to sign a statement listing any changes to the form or substance of his deposition and the reasons for making the changes. Fed. R. Civ. P. 30(e)(1). "A change in 'form' would include correcting a

6

typographical error or a spelling error. A change in 'substance' would include the substantive correction of a court reporter's transcription (i.e., the witness answers 'No,' but the court reporter records 'Yes'). *William L. Thorp Revocable Tr. v. Ameritas Inv. Corp.*, 57 F. Supp. 3d 508, 518 (E.D.N.C. 2014). The Rule "does not permit a party to make changes that substantively contradict or modify [a] sworn deposition." *Id.* at 518.

Mr. Blank's errata do more than correct the record. Rather, they reflect substantive modifications of the sworn testimony. For example, Mr. Blank has attempted to correct his testimony wherein he stated "My answer was no" to "My answer was no, except they are not employees of the company." This reflects neither a typographical correction nor a substantive correction as defined above. The errata sheet is therefore appropriately stricken.

Plaintiffs further move to strike Mr. Blank's post-deposition declaration. Plaintiffs argue that Mr. Blank's declaration directly contradicts his prior deposition testimony, and specifically cite portions of the declaration concerning whether Stromberg hired temporary sheet metalworkers [DE 60 ¶ 20; DE 67-1 Blank Depo. p. 74; DE 83-1 Blank Depo. pp. 118-121] and whether Stromberg owed contributions to plaintiffs [DE 60 ¶¶ 31, 32; DE 67-1 Blank Depo. p. 94; DE 83-1 Blank Depo pp. 109-111].

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (quoting *Perma Research and Development Co. v. Singer,* 410 F.2d 572, 578 (2d Cir.1969)). "Even under more generous articulations of the sham affidavit rule, litigants must explain subsequent inconsistent statements

7

in an affidavit in order to avoid the rule." *Adefila v. Davita, Inc.*, No. 1:13CV940, 2015 WL 268983, at *5 (M.D.N.C. Jan. 20, 2015).

The Court has reviewed the cited portions of the Blank Deposition transcript and the Blank Declaration and determines that the only directly contradictory statement in the declaration is that at paragraph thirty-two, where Mr. Blank declares that he understood "that Stromberg owed no contributions to Plaintiffs for Stromberg's use of the Temporary Workers . . . ." [DE 60 ¶ 32]. This is in direct contraction to his deposition testimony wherein he stated that he believed that Stromberg may owe money to the plaintiff Health and Pension Funds. [DE 67-1 pp. 29-30]. Stromberg offers no explanation for this inconsistency, other than to argue it is not inconsistent. The Court will strike paragraph thirty-two of Mr. Blank's post-deposition declaration. The Court declines, in its discretion, to strike any other portion of the declaration or the declaration in its entirety. This motion is therefore granted in part and denied in part.

B. *Stromberg's motion to strike plaintiffs' response to its statement of undisputed facts and response to its statement of additional disputed facts* [DE 86]

Stromberg moves to strike plaintiffs' responses to its statements of undisputed and additional disputed facts as being out of compliance with the Local Rules of the Middle District of Tennessee regarding summary judgment briefing. This Court has similar rules in place regarding statements of material fact in support of motions for summary judgment. Local Civil Rule 56.1. In response to this motion, plaintiffs have submitted revised responses. [DE 92-1]. The Court, in its discretion, deems these revised responses in substantial compliance with the Court's Local Civil Rules and therefore denies Stromberg's motion to strike.

C. *Stromberg's motion to strike plaintiff's reply or, in the alternative, motion for leave to file sur-reply* [DE 87]

Stromberg seeks to strike plaintiffs' reply in support of their motion for summary judgment as exceeding the page limitation allowed in the Middle District of Tennessee. In response, plaintiffs filed a reply in conformance with the page limitation, although Stromberg continues to oppose the proposed substitute reply brief.

Plaintiffs' original reply brief complies with this Court's Local Civil Rule 7.2(f). The Court, in its discretion, declines to strike plaintiff's reply. The Court further denies Stromberg's request to file a sur-reply. The motion is denied.

II. Motions for summary judgment

A. *Legal standards*

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and

9

citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

Multiemployer plans such as the plaintiff Funds come with benefits for both workers and employers: "employees receive benefits that follow them throughout jobs within a particular industry, and employers are able to offer those benefits while taking advantage of cost- and risk-sharing mechanisms." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 138 (4th Cir. 2019). To address the risks posed by multiemployer plans, Congress amended ERISA to create a "separate federal cause of action permitting multiemployer plans to collect contributions from employers so long as the plan is able to establish an obligation to contribute under the terms of the plan's governing documents or the CBA." *Id.* at 139. Specifically, Section 515 of ERISA provides that

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. ERISA puts multiemployer plans such as plaintiffs "in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). To that end, employers may not raise defenses relating to claims they may have against the union or those which would show that the employer and union agreed to different terms than those set forth in the CBA in a Section 515 action. *Id.* In sum, Section 515 actions are intended to streamline the

process of collection of delinquent contributions to ensure that the benefits plans remain funded. *Four-C-Aire*, 929 F.3d at 140.

Under Section 301 of the LMRA, federal district courts have jurisdiction over suits brought for violations of contracts between employers and labor unions. 29 U.S.C. § 185(a). The Funds, as third-party beneficiaries to the CBAs, may sue under Section 301. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 34 (2d Cir. 1994).

B. *Cross-motions for summary judgment* [DE 57 & 65]

It is undisputed that the plaintiffs are multiemployer pension and welfare plans and Stromberg is an employer as those terms are defined by ERISA. 29 U.S.C. § 1002. It is further undisputed that Stromberg is a signatory to the Local 5 and Local 100 CBAs. Both the Local 5 and Local 100 CBAs provide for a ratio of journeymen to non-journeymen that signatory employers such as Stromberg must follow. The plain terms of the Local 5 CBA require Stromberg to maintain at 1-to-2 employment ratio of journeymen to non-journeymen. *See* [DE 67-2] Dette Dep. Ex. 1 p. 19 § 30. The CBAs further require Stromberg to make contributions to the plaintiff Funds. *Id.* Ex. 1 pp. 18-19.

The first issue between the parties is whether the temporary sheet metal workers hired by Stromberg through staffing agencies were employees of Stromberg covered by the CBA. The CBA covers "the rates of pay and conditions of employment of all employees of the employer engaged in" sheet metal work. *Id.* Ex. 1 p. 1 Article 1 § 1. The parties do not dispute that the temporary sheet metal workers performed sheet metal work as defined by the CBA. Thus, the only question is whether the temporary sheet metal workers were employees of Stromberg under the CBA.

11

The CBAs in this case do not define the term employee but that term is defined by ERISA as "any individual employed by an employer." 29 U.S.C. § 1002(6). To determine whether a worker is an employee under ERISA, courts apply a common-law test which considers "the hiring party's right to control the manner and means by which the product is accomplished," as well as other relevant factors including "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992) (quotation and citation omitted). "The determination of whether a [worker] qualifies as an employee under ERISA is a mixed question of law and fact that a judge normally can make as a matter of law." *Jammal v. Am. Fam. Ins. Co.*, 914 F.3d 449, 453–54 (6th Cir. 2019).

Mr. Blank, Stromberg's Rule 30(b)(6) deponent, testified that, other than the entity through which the temporary sheet metal workers were paid, there was no difference between a temporary sheet metal worker and a Stromberg employee. [DE 67-1] Blank Depo. p. 74. Mr. Blank further explained that temporary sheet metal workers hired through staffing agencies Aerotek and Triangle Servitek would be controlled, managed, and supervised by Stromberg. *Id.* pp. 150-151. Mr. Blank stated that to his knowledge only Stromberg employees gave temporary sheet metal workers instructions about their work. *Id.* pp. 49-50.

On the other hand, Stromberg did not pay payroll or social security taxes for the temporary sheet metal workers nor did it select which temporary sheet metal workers were sent to it from the

12

staffing agency. *See* [DE 64-7] Castrejon Dep. p. 41-42. Stromberg also agreed not to hire-on any temporary sheet metal workers provided by Triangle Servitek during the temporary staffing period. *Id.* p. 46. Mr. Blank stated in his post-deposition declaration that Stromberg did not directly hire or fire temporary workers, Blank Decl. ¶ 20, but at his deposition he explained that a Stromberg employee would have directed any temporary sheet metal workers as to where to work and with whom, when they could take a break, and further observed their production and the quality of their work. Blank Depo. pp. 48-49.

Even viewing the evidence and inferences in the light most favorable to Stromberg, the record demonstrates that Stromberg controlled the manner and means by which the product was accomplished by the temporary sheet metal workers, the primary inquiry under *Darden*. While there are some additional factors which would weigh against a finding that the temporary sheet metal workers were Stromberg employees for purposes of ERISA, those factors do not outweigh those in favor of finding that the temporary sheet metal workers were Stromberg employees. For example, though payroll and other taxes were withheld by the staffing agencies and the duration of the relationship between Stromberg and the temporary sheet metal workers could be short, Mr. Blank testified that the fact that temporary sheet metal workers would be let go at the end of a job and rehired once there was more work was no different from Stromberg's treatment of its own employees. Blank Depo. p. 74. Stromberg hired the temporary sheet metal workers to perform work that is a regular part of its business and Stromberg controlled where and how long the temporary sheet metal workers would work and told them what to do. In sum, the Court concludes that the temporary sheet metal workers were Stromberg employees for purposes of ERISA.

In addition to arguing that the temporary sheet metal workers were not its employees for purposes of ERISA, Stromberg raises several other arguments in its Rule 56 motion against a

finding that it is ultimately liable for delinquent contributions to the Funds for its temporary sheet metal workers.[4] First, Stromberg contends that under the Local 5 CBA contributions are due only for four specific classes of employees – journeyman, apprentice, pre-apprentice, and classified sheet metal workers. CBA Art. III § 1. Stromberg argues that "temporary worker" is not one of the listed classifications, and thus Stromberg is not required to make Funds contributions on behalf of these workers.

However, the temporary sheet metal workers were not classified by Local 5 as journeyman, apprentice, pre-apprentice, or classified because, as it admits, Stromberg did not send all of its temporary sheet metal workers to the union hall for classification in violation of the CBA. To hold that Stromberg should be rewarded for its failure to comply with the terms of the CBA would go against the intent of Section 515 actions, which is to "increase the reliability of [the Funds'] income streams, reduce[] the cost and delay associated with collection actions, and reduce[] or eliminate[] the cost of monitoring the formation of collective bargaining agreements." *Ralph's Grocery*, 118 F.3d at 1022.

Stromberg further argues that the 2017 and 2019 Settlements it entered into with Local 5 control the outcome of this case. Those settlements relate to Stromberg's use of temporary sheet metal workers, and Stromberg contends that they control whether Stromberg is liable to the Funds for delinquent contributions. Stromberg's arguments are unavailing.

The Funds and the union are separate and distinct legal entities. The Funds are not parties to the CBA and their duties and interests are not necessarily the same as those of Local 5, or Stromberg. *Four-C-Aire*, 929 F.3d at 140. This is underscored by the fact that an employer may

---

[4] Plaintiffs have argued that Stromberg does not appear to contest the findings of the audit which reflect that it failed to make some contributions of Local 5 and Local 100 members, and Stromberg did not respond to this argument in its reply. *See* [DE 76; 79].

14

not use any defenses it has against the union in an action to recover unpaid contributions brought under Section 515. Indeed, the Funds are not "required to comb through the other parts of the collective bargaining agreement searching for additional terms related to [contributions]. *Ralph's Grocery*, 118 F.3d at 1024 (citing *Central Pennsylvania Teamsters Pension Fund v. W & L Sales, Inc.*, 778 F.Supp. 820, 830 (E.D.Pa.1991)).

Another court in this circuit considering a similar issue has held that "[t]he law is clear that Plaintiffs [funds] are permitted to pursue their unpaid contributions from [the employer], irrespective of any agreement that [the employer] may have reached with local union chapters or pension funds associated with local union chapters." *Int'l Painters & Allied Trades Indus. Pension Fund v. Madison Coatings Co.*, No. SAG-17-1559, 2019 WL 5625759, at *4 (D. Md. Oct. 31, 2019) (citing *Ralph's Grocery*, 118 F.3d at 1021).[5] This Court agrees and concludes that the law in this circuit clearly sets out that the settlement agreements between Local 5 and Stromberg are not binding on the plaintiff Funds nor do they preclude the Funds from seeking delinquent contributions from Stromberg.

Stromberg also argues that the CBA does not include an express promise to make contributions to the Funds for work by temporary sheet metal workers, and that no temporary sheet metal workers have made any claims to the Funds for benefits. But the Fourth Circuit has held that where the CBA refers to "employees," it refers to all, not some employees, and thus contributions cannot be limited to employees with union membership. *Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir. 1987); *see also Nesse as Trustees of Minnesota Laborers Health & Welfare Fund v. Green Nature-Cycle, LLC*, 7 F.4th 769, 776 (8th Cir. 2021); *Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, No. CIV.A. ELH-12-505, 2014 WL 853237, at *13 (D. Md. Feb. 28, 2014).

---

[5] For this reason, the fact that a representative of the plaintiff Pension and Health Funds were present at the meeting regarding Local 5's October 2018 grievance is immaterial.

15

Therefore, contrary to Stromberg's argument, acceptance of contributions on behalf of non-union workers would not violate Section 302 of the LMRA.

Moreover, that there have been no claims to the Funds by temporary sheet metal workers is inapposite – the Funds rely "upon contributions (and the investment income thereon) from all signatory employers to finance the defined benefits due to beneficiaries." *Flynn v. R.C. Tile*, 353 F.3d 953, 961 (D.C. Cir. 2004). This is the harm the Funds seek to remedy through this action. Thus, even if Stromberg could establish that the temporary sheet metal workers are "not eligible for and would never receive any fringe benefits from the Funds," that fact is not relevant to this Section 515 inquiry. *Nesse*, 7 F.4th at 778.

Finally, the Court considers Stromberg's argument that it should not be required to pay the journeyman rate for any work hours. The Funds contend that they do not know whether any of the individual workers are journeymen, and that they have no way of knowing an individual worker's skill level. Rather, plaintiffs contend that they are entitled to rely on the default ratio established by the CBA. The Court agrees with plaintiffs, as all of the relevant case law supports that in Section 515 actions the plaintiff benefits funds should not be required to "comb through the records" to determine how much in delinquent contributions they are owed. Additionally, Stromberg admittedly failed to refer its temporary sheet metal workers to the union hall for classification. Stromberg has not cited any case in which a court required a benefit fund in a Section 515 action to make a showing as to the classification of each worker for whom contributions are owed. The Court is unpersuaded by Stromberg's argument and concludes that the Funds are permitted to rely on the ratio set forth in the CBA.

Accordingly, the Court determines that plaintiffs are entitled to summary judgment in their favor on the issue of whether Stromberg is required to make contributions to the plaintiff Funds.

16

Stromberg's request for entry of judgment in its favor on this issue is therefore denied. Remaining for the Court's determination is whether plaintiffs are entitled to summary judgment in their favor on the amount of delinquent contributions owed.

Stromberg contends that there are genuine issues of material fact precluding summary judgment on this issue, specifically because the audits on which plaintiffs rely are inadmissible hearsay. Plaintiffs argue that using the ratio provided in the Local 5 CBA – a 1-to-2 ratio of journeymen to non-journeymen – the amount of the delinquency owed by Stromberg for the relevant period, 2015—2019, is $823,658.24. [DE 66 at 18]. Plaintiffs further contend that in addition to unpaid contributions, ERISA mandates the payment of liquidated damages and interest on the delinquency. *See* 29 U.S.C. § 1132(g)(2). Plaintiffs calculate the liquidated damages and interest due as totaling $430,658.16. *Id.* Finally, plaintiffs seek attorney fees and costs. 29 U.S.C. § 1132(g)(2)(D).

Stromberg does not dispute that the plaintiff Funds have the authority to audit employers or that the audit was conducted by an independent third-party, Calibre CPA Group, PLLC. Stromberg contends that plaintiffs have provided no evidence that the numbers in these reports are accurate and that the declarations of Don Dette, Kenneth Anderson, and Deanna Morris are insufficient grounds on which to admit the audit reports as they did not participate in the audit and have no personal knowledge of the information contained in therein. *See* Fed. R. Civ. P. 56(c)(2)(4).

Mr. Dette is the coordinator of the Sheet Metal Workers' Union Training Fund of North Carolina (Apprenticeship Fund). [DE 68]. Mr. Dette calculated the amount in delinquent contributions owed by Stromberg to the Apprenticeship Fund using the Calibre CPA audit. *Id.* Mr. Anderson is the audit and delinquency manager for the Sheet Metal Workers' National Benefit

17

Funds. [DE 91-1]. Ms. Morris is the manager of collections at Southern Benefit Administrator. [DE 91-2]. Mr. Anderson and Ms. Morris, in addition to providing copies of the third-party audit reports, include their additional calculations of interest and liquidated damages based upon the audit reports.

Stromberg does not contend that the audit reports replied upon by plaintiffs their affiants are not authentic. And Stromberg has failed to cite any "legal authority suggesting that an auditor or an affiant relying on an audit must physically observe each employee performing covered employment for a court to rely on the audit or affidavit." *Nat'l Elec. Ben. Fund v. Rabey Elec. Co.*, No. 11-CV-00184-AW, 2012 WL 3854932, at *7 (D. Md. Sept. 4, 2012). Although Stromberg also challenges the contents of the audit reports, it fails to create a genuine issue of material fact by filing "specific, documentary evidence to this Court demonstrating that erroneous calculations on particular employees form the basis of [the Funds'] damages claims." *Id.* 2012 WL 3854932, at *6; *see also Trustees of Painters Union Deposit Fund v. Ybarra Const. Co.*, 113 F. App'x 664, 669 (6th Cir. 2004) (without presenting documentation showing, among other things, that the number of total hours was excessive, defendant had failed to raise a genuine issue of material fact as to damages calculation).

Stromberg also challenges the fact that the Resolution 78 ratios were not applied during the audit calculations. Plaintiffs' declarations state that the auditors did not have sufficient information to apply these ratios. Specifically, Mr. Anderson stated that "Stromberg did not produce payroll records that would permit the auditor to apply the Resolution 78 variances to the audits." [DE 91-1]. ERISA requires employers to maintain records with respect to each employee sufficient to determine any benefits which are or may become due. 29 U.S.C. § 1059(a)(1). This provision "affects evidentiary burdens such that, when a plaintiff demonstrates the defendant's

18

failure to comply . . ., the burden of proving the accuracy of employment or benefit records shifts to the defendant." *Colin v. Marconi Com. Sys. Employees' Ret. Plan*, 335 F. Supp. 2d 590, 606 (M.D.N.C. 2004). Here, Stromberg has admitted that it had the opportunity both to dialogue with and provide information to the auditor and that it did not have complete and accurate payroll records to provide. *See* [DE 74] Bigelow Decl. ¶¶ 3, 8; [DE 63] Bigelow Decl. ¶ 17. Although Stromberg contends that Mr. Anderson's statement about the production of payroll records is false, it has not come forward with any documentary evidence which would raise a genuine issue of material of fact on this issue. The Court determines that because there were insufficient records to allow the auditor to apply the Resolution 78 ratio, plaintiffs are permitted to rely on the ratio agreed to by Stromberg in the CBA.

Accordingly, as Stromberg has failed to create a genuine issue of material fact, the Court determines that plaintiffs are entitled to summary judgment in their favor on their claim for damages in the amounts requested. ERISA therefore mandates the award of attorney fees and costs. 29 U.S.C. § 1132(g)(2). Plaintiffs are directed to file a motion accordingly within twenty-one days of the date of entry of judgment.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 57] is DENIED; plaintiffs' motion for summary judgment [DE 65] is GRANTED; plaintiffs' motion to strike [DE 82] is GRANTED IN PART and DENIED IN PART; defendants' motion to strike [DE 86] is DENIED; defendant's motion to strike [DE 87] is DENIED. Plaintiffs are awarded $823,658.24 in delinquent contributions for the audit period plus liquidated damages and interest on the delinquency in the amount of $430,658.16.

The Clerk of Court is DIRECTED to enter judgment accordingly. *See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Emps.*, 571 U.S. 177, 183 (2014). Plaintiffs are DIRECTED to file a motion for attorney fees and costs within twenty-one (21) days of the date of entry of this order. A response and reply may be filed pursuant to this district's Local Civil Rules.

SO ORDERED, this __ day of September, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE